## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| UNITED STATES, <br> *Plaintiff*, <br><br> v. <br><br> SYDNEY JACKSON, <br> *Defendant*. | No. 3:15-cr-00117 (VAB) |

### RULING AND ORDER ON MOTION FOR RECONSIDERATION

Sydney Jackson ("Defendant") has moved for reconsideration of the Court's Ruling and Order denying his motion compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Mot. for Recons., ECF No. 560 (Feb. 6, 2021) ("Mot. for Reconsideration"); *see also* Ruling and Order on Mot. for Compassionate Release, ECF No. 557 (Jan. 9, 2021) ("Order"); Mot. for Sentence Am. Pursuant to 18 U.S.C. § 3582(c), ECF No. 548 (Dec. 1, 2020) ("Mot. for Release").

The United States (the "Government") opposes his motion. Gov't Mem. in Opp'n to Def.'s Mot. for Recons. of Denial of Compassionate Release, ECF No. 562 (Feb. 16, 2021) ("Gov't Opp'n Reconsideration").

For the reasons set forth below, Mr. Jackson's motion for reconsideration is **DENIED**.

### I.     BACKGROUND

The Court assumes familiarity with the factual background of this case. *See* Order at 1-2.

On December 1, 2020, Mr. Jackson moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Mot. for Release.

On December 17, 2020, the Government opposed Mr. Jackson's motion. Gov't Mem. in Opp'n to Def.'s Mot. for Compassionate Release, ECF No. 555 (Dec. 17, 2020) ("Gov't Opp'n Release").

On January 9, 2021, the Court denied Mr. Jackson's motion for compassionate release. Order. In doing so, the Court explained the legal framework guiding its decision, recounted the factual background of the case, and addressed the parties' arguments. *See* Order. Ultimately, the Court concluded that the factors under 18 U.S.C. § 3553(a) weighed against Mr. Jackson's release, particularly with respect to his underlying offense conduct, criminal history, and "numerous disciplinary citations," which included an offense in which "Mr. Jackson refused to leave his cell when directed, then 'repeatedly lunged at an officer,'" as well as tickets for being in an unauthorized area, refusing to obey an order, being insolent to a staff member, threatening bodily harm, possessing a hazardous tool, and being absent from assignment. *Id.* at 17-18 (quoting Presentence Report, ECF No. 340 ¶ 9 (Jan. 26, 2017) ("PSR")). With respect to extraordinary and compelling reasons, the Court declined to definitively resolve the issue, given the failure of Mr. Jacksons' motion on § 3553(a) grounds. *Id.* at 15.

On January 16, 2021, Mr. Jackson moved for an extension of time to file a motion for reconsideration until February 6, 2021. Mot. for Extension of Time, ECF No. 558 (Jan. 16, 2021). On January 21, 2021, the Court granted the motion. Order, ECF No. 559 (Jan. 21, 2021).

On February 6, 2021, Mr. Jackson moved for reconsideration of the Court's order denying his motion for compassionate release. *See* Mot. for Reconsideration.

On February 16, 2021, the Government opposed Mr. Jackson's motion for reconsideration. *See* Gov't Opp'n Reconsideration.

## II.    STANDARD OF REVIEW

Motions for reconsideration "may be filed in criminal cases." *See United States v. Petersen*, No. 3:16-cr-109 (SRU), 2021 WL 217425, at *3 (D. Conn. Jan. 21, 2021) (citing *United States v. Clark*, 984 F.2d 31, 33-34 (2d Cir. 1993); D. Conn. L. Cr. R. 1(c) (explaining that D. Conn. L. Civ.

R. 7(c) shall apply in criminal proceedings); *United States v. Reyes*, No. 3:11-cr-1 (JBA), 2013 WL 789735, at *1 (D. Conn. Mar. 4, 2013)). Under Local Civil Rule 7(c), a motion for reconsideration must be "filed and served within seven (7) days of the filing of the decision or order from which relief is sought." *Id.*

"The standard for granting a motion for reconsideration 'is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked.'" *Id.* at *3 (quoting *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012)); *see also* D. Conn. L. Civ. R. 7(c)(1) ("Motions for reconsideration . . . will generally be denied unless the movant can point to controlling decisions or data that the court overlooked in the initial decision or order."); *United States v. Harris*, No. 3:99-cr-00264 (VAB), 2015 WL 6134352, at *2 (D. Conn. Oct. 19, 2015). A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys*, 684 F.3d at 52 (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)) (internal quotation marks omitted); *see also Fan v. United States*, 710 F. App'x 23, 24 (2d Cir. 2018) ("Reconsideration is not intended for the court to reexamine a decision or the party to reframe a failed motion.").

Rather, the standard for granting a motion for reconsideration "is strict," unless the moving party can identify "matters . . . that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Indeed, "[t]he major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal citations omitted).

### III.    DISCUSSION

Mr. Jackson sets forth three reasons as to why the Court should reconsider its denial of his motion for compassionate release: "(1) the significance of Mr. Jackson having had COVID-19 and been deemed recovered; (2) the seriousness of his offense conduct and his criminal history; and (3) the weight given to his disciplinary history." Mot. for Reconsideration at 2. Mr. Jackson also argues that even if the Court again concludes that Mr. Jackson should not immediately be released, the Court still should reduce his sentence. *Id.* at 15-17.

The Government opposes the motion, arguing that "[e]ach of the . . . three considerations [set forth by Mr. Jackson] was fully presented to the Court in connection with [Mr.] Jackson's initial motion." Gov't Opp'n Reconsideration at 4. The Government also argues that Mr. Jackson's "request for a partial sentence reduction was not raised in his original motions and also undermines his concerns regarding COVID-19." *Id.*

The Court addresses each argument in turn.

### A.  Mr. Jackson's Previous COVID-19 Diagnosis

Mr. Jackson observes that the Court "did not reach a conclusion" as to whether his motion established extraordinary and compelling circumstances, but argues that given his previous COVID-19 diagnosis, "the risks are far from resolved such that the Court should conclude that [he] is no longer at significant risk [from COVID-19]." Mot. for Reconsideration at 2-3. Mr. Jackson sets forth several cases in which courts have granted compassionate release or reduced the sentences of defendants who had contracted COVID-19 in custody, ultimately arguing that these cases, combined with "Mr. Jackson's comparatively worse health" than certain of those defendants, the "unknown" nature of his "opportunity to be vaccinated," and "the unwillingness and his fellow inmates and the staff" to do the same, should lead the Court to conclude on

reconsideration that the pandemic provides extraordinary and compelling circumstances sufficient for release. *Id.* at 2-6.

The Government argues that "the fact that the Court resolved [Mr.] Jackson's motion on alternative grounds does not mean that [his previous COVID-19 diagnosis] was not carefully considered," noting that the Court's opinion "described the parties' arguments in detail and carefully assessed the current state of the law regarding each of [Mr.] Jackson's conditions— including his prior COVID-19 diagnosis and recovery." Gov't Opp'n Reconsideration at 5. The Government argues further that his motion for reconsideration "advances the same arguments about his health that were raised in his original motion and presents no new information," *id.*, and argues further that, while some courts have reduced the sentences of COVID-positive inmates, others have held to the contrary, *id.* at 6-7.

The Court agrees.

In deciding Mr. Jackson's motion for compassionate release, the Court considered Mr. Jackson's prior COVID-19 diagnosis and observed that "while some district courts deciding the issue have concluded a previous diagnosis of COVID-19 is not an extraordinary and compelling reason for release, several courts have held the other way." Order at 12-14. The Court also cited the Centers for Disease Control's guidance as to the possibility of reinfection. *Id.* at 14-15. Therefore, to the extent Mr. Jackson argues that the Court did not sufficiently consider Mr. Jackson's prior diagnosis, or his potential for reinfection, this attempt at "relitigating old issues," *Analytical Surveys*, 684 F.3d at 52, is unavailing.

In any event, however, even if Mr. Jackson had set forth controlling data or decisions that the Court overlooked in its analysis of extraordinary circumstances, *see Harris*, 2015 WL 6134352, at *2, the Court did not base its denial on the extraordinary and compelling circumstances

prong. Instead, the Court explicitly held that it "need not definitively resolve whether Mr. Jackson has demonstrated an extraordinary and compelling reason for a sentence reduction" because his motion "fails for other reasons, specifically, under the §3553(a) factors." Order at 15. Therefore, any further evidence of any extraordinary and compelling circumstances that Mr. Jackson may face in custody, or evidence that any existing circumstances may be more grave than initially presented, would be insufficient grounds for the Court to reconsider its prior decision.

### B.  Mr. Jackson's Criminal History and the § 3553(a) Factors

Mr. Jackson next argues that the Court's application of the § 3553(a) factors to his case warrants reconsideration on several grounds, including that his conduct was "serious but no more than many others who have had their sentences amended" and that his criminal history was "overstated by the Order." Mot. for Reconsideration at 7 (emphasis omitted).

Specifically, Mr. Jackson compares his case to that of the defendant in *United States v. Sanchez*, 3:09-cr-023-JCH, ECF No. 1898 (Feb. 2, 2021), arguing that Mr. Jackson's case "makes no mention of firearms," while Mr. Sanchez's case "did uncover the presence of firearms." *Id.* Mr. Jackson also argues that his case is distinguishable from that in *United States v. Barton*, No. 1:02-cr-00080-001, 2021 WL 237692, at *2 (D. W. Va. Jan. 25, 2021), because Mr. Jackson's conduct "is somewhat modest drug-dealing," while in Mr. Barton's case, he had "decades remaining" on his sentence, "including for multiple counts of firearm possession in connection with drug dealing." *Id.* at 7-8.

Mr. Jackson also argues that the Court erred in its discussion of Mr. Jackson's criminal history, specifically in its statement that Mr. Jackson's criminal history includes "numerous narcotics-related convictions . . . that resulted in multiple-year prison terms." *Id.* at 8. As Mr. Jackson argues, his "PSR reflects one prior conviction that resulted in a multiple year prison term

that he was ordered to serve, and of which he only served approximately 13 months," and that "[t]he next longest imposed sentence was just one year, and it was imposed concurrent with that one multiple year prison term." *Id.*

Similarly, he argues that the Court "overlook[ed]" certain details relevant to Mr. Jackson's criminal history, *id.* at 8, specifically that the Criminal History Category IV determination was "driven in part by two points that arise from his 2004 convictions for possession of drugs and failure to appear," *id.* at 9. Mr. Jackson argues that his earlier possession charge was likely for possessing marijuana, which, considered alongside Mr. Jackson's young age when committing these offenses, "undermine[s]" the Category IV classification. *Id.* at 9-10. Mr. Jackson also argues that the Category IV classification is undermined further because he "received a point for a fine and conditional discharge for a driving while impaired in 2015," *id.* at 11, and because the point received for his 2014 offense falls within the same time span as the alleged conduct here, *id.* at 11-12. Finally, Mr. Jackson argues that the Court erred by inaccurately "brand[ing] [him] with not only having acquired cocaine but also heroin from suppliers." *Id.* at 7.

The Government responds that the Court's Order addressed these arguments and "made clear that the Court had, in fact, considered those issues in resolving [Mr.] Jackson's motion." Gov't Opp'n Reconsideration at 8. As to Mr. Jackson's attempt to compare himself to other similarly-situated defendants, the Government argues that "[n]othing prevented [him] from raising this argument in his prior motion," and "in any event, the Court's opinion highlighted concerns about [his] dangerousness and the seriousness of his conduct." *Id.* Finally, the Government notes that the "sole mention of heroin in the Court's opinion . . . is a direct quote from the Presentence Report," and is not a basis for reconsideration. *Id.* at 8-9.

The Court agrees.

After thoroughly discussing the parties' arguments as to the § 3553(a) factors, *see* Order at 15-16, the Court set forth several bases for its conclusion that the § 3553(a) factors weighed against Mr. Jackson's release. *See* Order at 17-18. As the Court observed, citing directly to the Presentence Report, Mr. Jackson as part of his underlying offense conduct acquired "substantial quantities" of drugs[1] and "arranged or directly participated in 'multiple buys' of narcotics," and "'was on probation when he initially engaged in the instant offense.'" *Id.* at 17 (quoting PSR ¶¶ 11-18, 98). The Court observed further that Mr. Jackson "has been involved in the business of drug dealing since he was a teenager," and "has a very limited employment history," with "no indication that he gave much effort to maintaining long term employment anywhere, at least without a side hustle of settling drugs." *Id.* (internal quotation marks omitted).

Mr. Jackson's citations to other cases involving defendants granted compassionate release whose criminal history or offense conduct were arguably more "serious" than his also are unavailing. As an initial matter, Mr. Jackson offers no support for his contention that the conclusions of other district courts with respect to entirely separate defendants, with unique criminal and individual histories, disciplinary records, and offense conduct, should have any significant bearing on the Court's application of the § 3553(a) factors to his case. The § 3553(a) factors are highly fact-specific and require the Court to engage in an analysis of the particular "nature and circumstances" of Mr. Jackson's conduct, characteristics, history, and other factors, *see id.*, making a direct comparison to other defendants a difficult endeavor. And, in any event,

---

[1] The Court acknowledges that its quotation of the Presentence Report as to the "substantial quantities of cocaine and heroin" involved, *see* Order at 17 (citing PSR ¶ 11) was imprecise, as the Presentence Report attributed that conduct to both Mr. Jackson and John King, not only specifically to Mr. Jackson. *See* PSR ¶ 11 ("The investigation revealed that Sydney Jackson and John King acquired substantial quantities of cocaine and heroin from sources in New York.").

even if the Court found these cases persuasive or applicable to Mr. Jackson, these cases also are not "controlling" sufficient to warrant reconsideration. *Petersen*, 2021 WL 217425, at *3.

Moreover, even if the Court wished to consider these cases, it too could consider the wide array of cases from across this Circuit in which defendants with arguably less or similarly "serious" conduct[2] to Mr. Jackson, including those, in some cases, who previously contracted COVID-19, have been denied compassionate release. *See, e.g.*, *United States v. Miranda*, 457 F. Supp. 3d 141, 147 (D. Conn. 2020) (denying compassionate release to a defendant with a Criminal History Category I who had, prior to his offense conduct, exhibited "otherwise law abiding behavior"); *United States v. Gutierrez*, No. 3:16-cr-114 (VAB), 2020 WL 4435246, at *5 (D. Conn. Aug. 3, 2020) (denying compassionate release to a defendant with a Criminal History Category IV); *United States v. Daniels*, No. 1:17-CR-00129 EAW, 2021 WL 900544, at *3 (W.D.N.Y. Mar. 10, 2021) (denying compassionate release to defendant with a Criminal History Category III who had previously contracted COVID-19); *United States v. Sanchez*, No. 16 Cr. 500 (RMB), 2020 WL 3790546, at *3 (S.D.N.Y. July 7, 2020) (denying compassionate release where defendant had participated in a conspiracy to distribute cocaine and had a disciplinary infraction in custody for "possessing a hazardous tool"); *United States v. Echeverria*, No. 18 Cr. 347 (RMB), 2020 WL 7625145, at *3 (S.D.N.Y. Dec. 22, 2020) (denying compassionate release where defendant who committed nonviolent money laundering offenses had a Criminal History Category I); *United States v. Saunders*, No. 3:19-cr-00167 (VLB), 2020 WL 6507389, at *1, *6-*8 (D. Conn. Nov. 5, 2020) (slip op.) (denying compassionate release to defendant with a Criminal History Category IV, which included prior convictions for drug distribution, reckless driving, and failure to appear,

---

[2] The Court does not reach any conclusions as to the relative "seriousness" of any conduct described in these cases, but discusses these cases to illustrate that assessing the "seriousness" of any offense, or the overall dangerousness of a criminal defendant, is a fact-specific endeavor that requires an individualized inquiry.

who had previously contracted COVID-19, finding that he had "successfully weathered a previous infection" and "put forward no evidence that he will or is likely to contract the virus again, or if he did that his condition would be worse now than it was when he contracted the virus previously").

The Court considered Mr. Jackson's criminal history, offense conduct, and nature and circumstances of the crime, along with the other § 3553(a) factors, in its decision denying Mr. Jackson compassionate release. *See* Order at 16-18. Mr. Jackson has not set forth any "controlling decisions or data" the Court overlooked in its Order, *Petersen*, 2021 WL 217425, at *3, such that the Court can or should reconsider its denial on this basis.[3]

### C.  Mr. Jackson's Disciplinary History

Mr. Jackson admits that his disciplinary history in prison is "noteworthy," but argues that this should not have precluded him from being granted compassionate release. Mot. for Reconsideration at 12-15. As Mr. Jackson argues, several courts have granted compassionate release where defendants had incurred disciplinary tickets while in custody. *See id.* at 12-14 (collecting cases). In Mr. Jackson's view, the issues motivating his disciplinary conduct are "better addressed by treatment outside the prison system," and "[t]he consequences of [his] conduct should not include subjecting himself to further risk to his health." *Id.* at 14.

The Government argues that Mr. Jackson already raised this argument "nearly verbatim" in his original motion, and this argument was "carefully considered" by the Court such that reconsideration is not warranted. Gov't Opp'n Reconsideration at 9. The Government notes that several courts in this District have "denied relief even where defendants had no disciplinary infractions." *Id.* at 9. Finally, the Government argues that Mr. Jackson's "pattern of behavior while

---

[3] To the extent Mr. Jackson argues that his criminal history is overstated because his possession of drugs offense "likely was a charge of possession of marijuana," Mot. for Reconsideration at 8-9, and that his failure-to-appear offense "appears to have flowed from the possession of marijuana," *id.* at 10, those arguments are unavailing, as they are speculative at best and, in any event, Mr. Jackson could have raised these issues in his initial motion.

in custody has been persistently troubling," particularly because Mr. Jackson has not been "discipline-free for a substantial period of time" and his infractions did not occur "at the start of his term of incarceration." *Id.* at 10.

The Court agrees.

The Court again notes that, as part of the § 3553(a) inquiry, its analysis of the weight and impact of Mr. Jackson's disciplinary infractions while in prison is a highly fact-specific question that makes a direct comparison with other defendants difficult at best. In its denial of Mr. Jackson's original motion, however, the Court discussed Mr. Jackson's disciplinary history in detail, noting that Mr. Jackson had incurred tickets for "refus[ing] to leave his cell when directed, then reportedly lung[ing] at an officer"; "being in an unauthorized area"; on multiple occasions, "possessing drugs/alcohol"; "being insolent to staff member"; "threatening bodily harm"; on multiple occasions, "being absent from assignment"; on multiple occasions, "possessing a hazardous tool"; and on multiple occasions, "refusing to obey an order." Order at 17 (internal quotation marks omitted). Mr. Jackson does not now argue that those tickets were unjustly incurred or that the Court erred in its analysis and recitation of those infractions, but instead argues that other courts in this Circuit have granted sentence reductions even where defendants have incurred such infractions. *See* Mot. for Reconsideration at 13-14.

Mr. Jackson, however, raised precisely this argument in his original filings, where he argued that "[t]he disciplinary record here should not stop the Court from ordering Mr. Jackson's release," because he "already has been punished for all of those incidents," and "consequences [for his infractions] should not include subjecting himself to further risk to his health" in custody. *See* Def.'s Suppl. to Mot. for Sentence Am. Pursuant to 18 U.S.C. §3582(c), ECF No. 554 at 5 (Dec. 14, 2020) ("Def.'s Suppl. Mot."). Indeed, a number of the cases now offered by Mr. Jackson to

support his argument that "a poor record has not prevented courts within the Second Circuit from granting numerous sentence reductions under 18 U.S.C. § 3582(C)(1)(A)," Mot. for Reconsideration at 13 & n.12, were also cited in his prior filings. *Compare id.* with Def.'s Suppl. Mot. at 4-5. The Court considered these cases then, and they do not warrant reconsideration now.

The additional cases Mr. Jackson cites in his motion for reconsideration – namely, *United States v. Hancock*, No. 3:12-cr-00015 (VAB), 2021 WL 71451 (D. Conn. Jan. 8, 2021), *United States v. Hargrove*, No. 3:18-cr-0022-2 (VLB), 2021 WL 170836 (D. Conn. Jan. 19, 2021), and *United States v. Barton*, No. 1:02-cr-00080-001, 2021 WL 237692 (D. W. Va. Jan. 25, 2021) – also do not support reconsideration. *See* Mot. for Reconsideration at 13.

First, even if they were persuasive, these additional cases are not "controlling" on this Court. *See Petersen*, 2021 WL 217425, at *3. Moreover, they are factually dissimilar to the circumstances here. In *Hancock*, for example, the Court explicitly observed that Mr. Hancock had "received only one disciplinary ticket during his over nine years in federal prison," with the most recent ticket occurring "nearly two years" earlier and "follow[ing] what apparently were seven years without incident." 2021 WL 71451 at *7. In *Hargrove*, the court noted that the defendant had already "served over 43 months of [his] 48[]months of imprisonment," noting the "limited duration remaining on [his] sentence," and observed that though the defendant had "received several disciplinary tickets while serving prior state sentences," he had "received his last disciplinary ticket before his arrest for the instant offense, meaning that he ha[d] served his current sentence discipline-free." 2021 WL 170836 at *7-8. Finally, in *Barton*, while the defendant had "had numerous inmate disciplinary sanctions, one as recently as 2020, mainly for drug possession," the Court noted that Mr. Barton was "58 years old" and was "serving an effective life sentence," and ultimately chose to reduce Mr. Barton's sentence to 300 months imprisonment in

part because the Court found that "the stacking of [his] . . . sentences, and their resulting disparate severity," was an extraordinary and compelling reason for release. 2021 WL 237692 at *2-3.

Accordingly, reconsideration is not warranted on this basis.

### D. Reduction of Sentence

Finally, Mr. Jackson argues that the Court did "not address[]" in its ruling and order the option to "reduce but not eliminate a defendant's prison sentence," and now "should consider, at least, a reduction that tracks the bottom of the Guidelines that would apply had the Court been able to truly apply a 1:1 ratio and not had the obstacle of the 10-year minimum." Mot. for Reconsideration at 16-17 (quoting *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020)).

The Government argues that such a reduction is not warranted on several grounds, including that (1) "[Mr.] Jackson never sought such a reduction in his [original] motion, instead stating only that he was seeking a sentence reduction to time served"; (2) his request for a partial sentence reduction "undermines his concerns about COVID-19"; (3) "in any event, . . . a partial reduction is not warranted in this case" given Mr. Jackson's "disciplinary history (including his recent infractions), offense conduct (including criminal conduct while on probation), and criminal history, among other § 3553(a) factors"; and (4) "arguments about the 1:1 ratio were fully presented to the Court at the time of sentencing and already provided some basis for the Court's below-Guidelines sentence." Gov't Opp'n at 11-12.

The Court agrees.

As an initial matter, Mr. Jackson did not raise the option of a partial sentence reduction in his original motion for compassionate release. Indeed, Mr. Jackson specifically and solely requested relief in the form of "amend[ing] the sentence to time served and amend[ing] the conditions of supervised release as necessary, including to effectuate Mr. Jackson's release to a

home . . . ."[4]  *See* Mot. for Release at 9. Therefore, Mr. Jackson's argument that the Court should "reduce but not eliminate" his sentence, made now for the first time, is not properly raised on reconsideration. *See United States v. Sharif*, No. 3:13-cr-172 (SRU), 2020 WL 6488055, at *1 (D. Conn. Nov. 4, 2020) ("A motion for reconsideration may not be used to 'advance new facts, issues or arguments not previously presented before the Court, nor may it be used as a vehicle for relitigating issues already decided by the Court." (quoting *Conn. Comm'r of Labor v. Chubb Grp. of Ins. Cos.*, No. 3:11-cv-00997 (AWT), 2013 WL 836633, at *1 (D. Conn. Mar. 6, 2013))).

Moreover, as Mr. Jackson indicated, he specifically sought "relief from the Court so that he can be released from the risks he faces in the prison system, particularly the additional medical risks he would endure in contracting COVID-19." Mot. for Release at 1. Mr. Jackson's primary arguments for relief under 18 U.S.C. § 3582 all relate to the ongoing COVID-19 pandemic. *See id.* at 3-4 (describing how "[t]he pandemic's impact on corrections facilities is an extraordinary circumstance, especially for Mr. Jackson,") (emphasis omitted); *id.* at 4-6 (describing Mr. Jackson's medical concerns in relation to COVID-19); *id.* at 7-8 (describing how the § 3553(a) factors weigh in favor of release, arguing in particular that "[t]he overriding factor under § 3553(a) that was not present at the time of sentencing is the COVID-19 pandemic and the serious risk it presents to Mr. Jackson's health and safety").

Given Mr. Jackson's focus on COVID-19 in his initial motion for compassionate release, his argument now that the Court should reduce Mr. Jackson's sentence based on other factors unrelated to COVID-19, such as the application of a 1:1 ratio, *see* Mot. for Reconsideration at 16-17, belies his pandemic-related concerns. And to the extent his argument relies on the "more

---

[4] The first page of Mr. Jackson's motion states that he is "mov[ing] for a sentence amendment," but, to the extent Mr. Jackson meant this to refer to an amendment different than immediate release, the motion makes no such specific reference. *See* Mot. for Release at 1.

punitive" conditions of custody created by the pandemic, these were previously articulated in his original motion, *see* Mot. for Release at 8-9, and considered by the Court, *see* Order at 15-16.

Further, as to the application of the 1:1 ratio, the Court made clear at sentencing that it had considered Mr. Jackson's arguments to this end and indicated that "using the 1-to-1 [ratio] now is the more appropriate starting point when we have [a] disparity that has existed historically and that [the Court] ha[d] done consistently for other defendants in this case." Sent. Tr., ECF No. 477 at 42:1-7. As the Court stated, the 1:1 ratio "certainly [wa]s the basic reason for [the Court] varying from the sentencing guideline scheme," *id.* at 42:8-9, and the Court imposed a mandatory minimum sentence of 120 months, below the Guidelines range. *See id.* at 49:12-23 (also declining to apply "the additional two years that the government asked for").

Accordingly, because Mr. Jackson failed to raise this issue in his original motion and has in any event failed to present any "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice" that would require the Court to now consider a partial sentence reduction, *Virgin Atl. Airways, Ltd.*, 956 F.2d at 1255, the Court will not reconsider its ruling and order on this basis.

## IV.    CONCLUSION

For the reasons explained above, the motion for reconsideration is **DENIED**.

**SO ORDERED** at Bridgeport, Connecticut, this 30th day of April, 2021.

   /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge